Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1550 | **DATE** | 9/3/2003 |
| **CASE TITLE** | Daniels vs. Bursey | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, defendants' motions to dismiss (33-1, 40-1, 41-1, 44-1, 63-1) are granted in part and denied in part. Count three is dismissed for failure to state a claim. Count 4 is dismissed for noncompliance with Rule 9(b). Defendants' motions are otherwise denied. Plaintiffs are granted leave to file an amended complaint on or before September 18, 2003. John Koresko's motion to appear pro hac vice is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 0 5 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | C-/- | 93 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | 03 SEP -4 PH 3:45 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN DANIELS, et al., and similarly situated individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>WAYNE BURSEY, et al.,<br><br>Defendants. | SEP 0 5 2003<br><br>Case No. 03 C 1550 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

This case concerns the marketing and administration of a "severance trust executive program" (STEP) plan, a type of employee welfare benefit plan targeted to employers with highly compensated employees. John Daniels and Manuel Sanchez, along with other partners and employees of the Chicago-based Sanchez and Daniels law firm, and on behalf of a putative class of STEP plan investors, have sued Step Plan Services, Inc., its principals, and several insurance companies, alleging violations of the Employee Retirement Income Security Act (ERISA) and the Illinois Consumer Fraud Act and claims for fraudulent inducement and breach of fiduciary duty arising from the defendants' actions in promoting or managing the Sanchez and Daniels STEP Plan and other similar plans. Several of the insurance companies named in the complaint now move to dismiss plaintiffs' breach of duty and Consumer Fraud Act claims.

### Factual Background

For purposes of this motion to dismiss we accept as true plaintiffs' well-pleaded factual allegations. *Thompson v. Illinois Department of Professional Regulation*, 300 F.3d 750, 753 (7th

Cir. 2002). Sanchez and Daniels is a Chicago law firm. In December 1995, it adopted a STEP Plan, a type of employee benefit plan governed by ERISA. *See* Complaint, Ex. D. In their complaint, Sanchez and Daniels and its partners and employees allege that they were fraudulently induced to adopt the STEP Plan, saying that the Plan's promoters falsely represented that contributions to the plan would be tax deductible and that employers participating in the plan could easily withdraw plan assets. Complaint, ¶¶ 68, 79. According to plaintiffs, recent United States Tax Court rulings and a proposed revision to the tax laws indicate that the type of STEP Plan in which they invested does not qualify for favorable tax treatment; they allege that defendants were aware when they persuaded plaintiffs to adopt the Plan that it was not what it purported to be–a plan described in Section 419A(f)(6) of the Internal Revenue Code. Complaint, ¶¶ 99, 125-130. Plaintiffs further allege that the Plan's fiduciaries (which plaintiffs identify as Benistar Insurance Group, Inc., Step Plan Services, Inc. and their principals, Mellon Trust of New York, and Teplitzky & Company, P.C., *see* Complaint, ¶¶ 48-55) mismanaged the Plan, amending its structure without authorization and misappropriating its assets. Complaint, ¶¶ 56-139.

In addition, plaintiffs have sued several major insurance companies whose life insurance policies were purchased to fund the Sanchez and Daniels Plan or other STEP Plans. The allegations against the insurance companies fall into two separate categories. First, plaintiffs allege that Prudential Insurance Co., CLU & Associates, and Thomas Murphy, an alleged agent of both CLU and Prudential, allowed the proceeds of Prudential's demutualization that were paid to holders of its of insurance policies to be distributed to the Plan's Trustees (Benistar et al.), without ensuring that the funds were actually credited to the Plan. Complaint, ¶¶ 221-234.

Plaintiffs characterize this alleged lack of oversight as negligent, and they claim that Prudential, CLU and Murphy are responsible for allowing the Plan fiduciaries to "loot" the demutualization proceeds. *Id.* Second, plaintiffs allege that Prudential, CLU, Murphy, and Bruce Levy (who plaintiffs credit with developing the idea of a STEP Plan), along with five other insurance companies (National Life Insurance Co., Allmerica Financial Benefit Insurance Co., New York Life Insurance Co., Metropolitan Life Insurance Co., and Hartford Life Insurance Co.) whose life insurance policies were allegedly procured to fund STEP plans other than Sanchez and Daniels' Plan, violated the Illinois Consumer Fraud Act by making false assurances through certain marketing materials that the STEP plans they promoted qualified as tax deductible welfare benefit plans under Internal Revenue Code and ERISA provisions. Complaint, ¶¶ 235-249.

The motions to dismiss currently before the Court concern only the common law breach of duty allegations against Prudential, CLU and Murphy, and the Illinois Consumer Fraud Act allegations against Murphy, Levy and the insurance companies.

### Discussion

1.  Breach of duty of care (count 3)

In count 3 of the complaint, plaintiffs allege that Prudential, CLU and Murphy breached a common law duty of care by failing to ensure that demutualization proceeds attributable to the STEP Plan as an insurance policyholder were actually paid over to the Plan.[1] Plaintiffs do not allege that defendants erred in paying out shares of Prudential stock (the demutualization

---

[1] In 2001 Prudential demutualized: it changed its status from a mutual insurance company owned by its policyowners to that of a public stock company owned by its shareholders. Prudential's Mot. at 5. The demutualization process required Prudential to distribute stock to certain policyowners, among them the Trustee of the Sanchez and Daniels STEP Plan. Count III concerns the distribution of this stock (the demutualization proceeds).

3

compensation) to the Plan's Trustee, but rather that they knew or should have known that the Plan's fiduciaries would misappropriate the stock and should have taken steps to avert this alleged fraud. *See* Complaint, ¶¶ 230-232 (Prudential, Murphy, and CLU negligently "failed to fully investigate the nature of the payment of the demutualization proceeds to the Step Plans," "allowed the demutualization proceeds to be credited to entities other than the Step Plans,"and "failed to stop [the Plan fiduciaries] from perpetrating their scheme to loot STEP Plan demutualization proceeds").

Prudential and Murphy move to dismiss count 3 for failure to state a claim. They argue that plaintiffs have conceded in the complaint that Prudential was not itself a Plan fiduciary and that as a result, it owed no duty to protect the Plan's assets. *See* Complaint, "Fiduciary Status of Certain Defendants," ¶¶ 48-55 (distinguishing between "fiduciary defendants" (whom plaintiffs identify as Step Services, Benistar, Benistar Adminstrative Services, Mellon Trust, and their agents) and the remaining named defendants (the insurance companies and their agents), none of whom are identified as fiduciaries). Defendants contend that the claim in count 3 is based on a non-existent legal duty to inquire into how an insurance policyowner plans to allocate proceeds from its insurance policies.

In response, plaintiffs attempt to extend the allegations in the complaint, arguing that Prudential and Murphy were indeed plan fiduciaries because they "marketed and sold the STEP plan to Plaintiffs." Pl's Resp. at 6. But this theory is without legal support. As plaintiffs themselves acknowledge, a fiduciary of an ERISA plan must at least exercise some discretionary authority or control over a Plan's management or the disposition of its assets. *See* 29 U.S.C. 1002(21)(A); *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 535 (7th Cir. 1991); *see also*

*American Federation of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Society of the United States*, 841 F.2d 658, 664 (5th Cir. 1988) ("Simply urging the purchase of its products does not make an insurance company an ERISA fiduciary with respect to those products"). There are no allegations in the complaint that Prudential (or its agents) exercised this type of influence over plaintiffs' STEP Plan. As defendants argue, therefore, count 3 does not state a claim for breach of fiduciary duty, but rather appears to assert a novel claim based on an insurance company's alleged duty to monitor the financial dealings of its policyholders. Because plaintiffs offer no support for the existence of such a duty, and because plaintiffs have failed generally to identify a cognizable duty of care to support a claim for negligence, count 3 is dismissed.

2. Illinois Consumer Fraud and Deceptive Practices Act (count 4)

In count 4 of the complaint, plaintiffs assert claims under the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/10a, against each of the named insurance companies (National Life, Allmerica, New York Life, Metropolitan Life, Hartford Life, Prudential, and CLU), Murphy as an alleged agent of CLU and Prudential, and Levy, an alleged developer of the STEP Plan concept. Plaintiffs allege that through marketing materials, defendants Prudential, Murphy and Levy made false or misleading statements regarding the tax and ERISA status of the STEP Plan that plaintiffs adopted, and that they relied on these statements in deciding to invest in the Plan. *See* Complaint, ¶ 4. Plaintiffs advance the same allegations against all of the insurance companies, Murphy, and Levy on behalf of the putative class, stating that defendants made similarly false or misleading statements through marketing materials sent to other prospective STEP Plan investors. Defendants have moved to dismiss this claim on several grounds.

5

To state a claim under the Illinois Consumer Fraud Act, plaintiffs must allege (1) a deceptive act or practice by the defendants, (2) the defendants' intent that plaintiffs rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiffs (5) proximately caused as a result. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149, 776 N.E.2d 151, 160 (2002). Defendants first argue that count 4 fails to state a claim in that plaintiffs fail to allege proximate cause and actual damages as a result of the allegedly misleading marketing information. Relying on *Oliveira,* they insist that plaintiffs were required to plead that they actually heard or read defendants' allegedly misleading statements. The Court disagrees. Plaintiffs are not required to plead proximate cause with any particular degree of specificity. *Oliveira* simply holds that a plaintiff attempting to assert a claim under the Illinois Consumer Fraud Act must allege that he was "in some manner deceived." *See Oliveira,* 201 Ill.2d at 155, 776 N.E.2d at 164 (rejecting Consumer Fraud Act claim based on a "market theory" of causation in which plaintiff alleged that he was damaged by advertisements that created an artificially inflated price for the gasoline he purchased–irrespective of whether plaintiff or other members of a putative class saw or heard the specific advertisements in question). It is thus adequate for plaintiffs to allege, as they have here, that they and the other members of the putative class would not have participated in STEP Plans without defendants' allegedly false assurances. *See* Complaint, ¶¶ 246-248. Plaintiffs ultimately must prove that they read and were affected by defendants' marketing materials. *See Oliveira,* 201 Ill. 2d at 154-155, 776 N.E.2d at 163-164; *Zekman v. Direct Marketers Inc.*, 182 Ill.2d 359, 375, 695 N.E.2d 853, 861 (1998)(granting summary judgment for defendant on Consumer Fraud Act claim in part because plaintiff's deposition testimony showed that he never read or relied on bills containing

alleged misrepresentations). At the pleading stage, however, their general allegations to this effect are sufficient. *See Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002)("The federal rules require (with irrelevant exceptions) only that the complaint state a claim, not that it plead the facts that if true would establish (subject to any defenses) that the claim was valid.").[2]

Plaintiffs' damages allegations– that they invested money in the Plans that could have been used for other purposes, *see* Complaint, ¶ 249–satisfies the required pleading standard as well. Ambiguities in the complaint must be construed in favor of plaintiffs, *Thompson*, 300 F.3d at 753, and the Court can reasonably infer from their allegations that plaintiffs are seeking damages for the opportunity costs squandered by investing their money in a plan more restrictive and less beneficial than defendants allegedly represented.

Defendants next argue that count 4 should be dismissed because certain documents attached to the complaint undermine required allegations that defendants intended that plaintiffs rely on their allegedly misleading statements. They point to a disclaimer in the STEP Plan adoption agreement which states that "[Sanchez and Daniels] acknowledges that it has not relied upon the Plan Sponsor, the Insurer, or their agents, for tax advice in connection with its decision to adopt the plan ... We have been advised to consult with our tax advisors for an independent review of this plan and its implications to us as an employer." *See* Complaint, Ex. D, Adoption Agreement at 4. This contract clause arguably provides evidence that the defendant insurance

---

[2] The members of Sanchez and Daniels do not appear to claim that they were the recipients of any representations made by the insurance companies other than Prudential or that their Plan held any of the other insurers' policies. But they nonetheless may be able to represent a class of STEP Plan investors who dealt with those insurers. At the pleading stage it is sufficient that members of the putative class can assert a claim against the insurers. *See Payton v. County of Kane*, 308 F.3d 673, 681-682 (7th Cir. 2002)("[i]f the defendants with whom the named representative did not interact directly are following a common statute ... we see nothing in either standing doctrine or Rule 23 that automatically precludes use of the class device").

7

companies did not intend for plaintiffs to rely on any alleged representations they made regarding the STEP Plan's tax status, but it is not conclusive on the issue, and it does not support dismissal at the pleading stage.

Prudential and Murphy, who together have filed a separate motion to dismiss count 4, make a similarly unpersuasive argument that plaintiffs have pleaded themselves out of court by attaching documents (the Adoption Agreement and Employer Acknowledgment, Complaint, Ex D) that undermine the alleged materiality of the defendants' representations regarding the Plan's tax and ERISA status. They rely on the same disclaimers cited above as evidence that plaintiffs "could not count on either guaranteed tax deductibility or the 'easy withdrawal' of contributions." But this evidence is not conclusive on the issue of materiality, which is a question of fact to be addressed at a later stage in the case. *See L.R.J. Ryan v. Wersi Electronic GmbH & Co.*, 59 F.3d 52, 54 (7th Cir. 1995) (affirming summary judgment for defendant on Consumer Fraud Act claim because plaintiff failed to raise a genuine issue of material fact as to whether alleged misrepresentations were material). Defendants rely on *Wersi* for the proposition that alleged oral misrepresentations belied by clear written materials to the contrary cannot be deemed "material" as a matter of law. But the issue of materiality in *Wersi* was decided on summary judgment, after the parties had an opportunity to develop evidence concerning the weight to be afforded the defendant's alleged statements. *Id.* Here as there, we reserve judgment on how much weight to assign the disclaimer provision in plaintiffs' STEP Plan adoption agreement until we can review the evidence regarding Prudential and Murphy's alleged misrepresentations.

Defendants next argue that count 4 should be dismissed because the misrepresentations

8

alleged are misleading legal opinions– not misrepresentations of fact. As a general rule, a deceptive representation of law does not support a claim under the Consumer Fraud Act because parties are assumed to be equally capable of knowing the law. *Capiccioni v. Brennan Naperville Inc.*, 339 Ill. App. 3d 927, 791 N.E.2d 553, 559 (2003). But "the inquiry has evolved from a 'strict misrepresentation of fact versus law dichotomy.'" *Id.* (quoting *Gilmore v. Kowalkiewicz*, 234 Ill. App. 3d 522, 529, 600 N.E.2d 492, 497 (1992)). The appropriate test for determining whether a "legal" misrepresentation is actionable depends whether the misrepresentation could have been discovered "'merely' by reviewing the applicable law." *Id.* Here, plaintiffs have alleged that defendants misrepresented the tax and ERISA status of an employee benefit plan. Defendants would be hard-pressed to contend that the legal status of plaintiffs' STEP Plan, or the status of any particular welfare plan could be determined easily simply by reading the appropriate provision of the Internal Revenue Code or Regulations. If, as alleged, defendants were advancing deliberately false assessments of the STEP Plan's tax and ERISA status in order to attract investors, those misrepresentations are actionable.

The Court agrees with defendants, however, that plaintiffs have failed to comply with Federal Rule of Civil Procedure 9(b), which requires them to allege with specificity the circumstances of the fraud underlying their claim. *See* Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake must be stated with particularity."). *Petri v. Gatlin*, 997 F. Supp. 956, 973 (N.D. Ill. 1997) (Consumer Fraud Act claims are subject to the pleading standard imposed by Rule 9(b)). The Consumer Fraud Act claim in count 4 is based on alleged misrepresentations made through "marketing materials produced and distributed to Sanchez and Daniels," and to other STEP Plan participants.

9

Complaint, ¶ 240. To satisfy Rule 9(b), plaintiffs must allege the "who" "what " where" and "when" of the alleged fraud. *See Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). In doing this, plaintiffs may not lump the defendants together in a group; rather, they must specify each defendant's participation in the alleged fraud. *See Vicom v. Harbridge Merchant Services*, 20 F.3d 771, 778 (7th Cir. 1994). Thus, with respect to each of the insurance company defendants, plaintiffs must identify what misrepresentations that company or its representatives are claimed to have made, by what means, when, and to whom. We therefore dismiss count 4 for noncompliance with Rule 9(b), with leave to file an amended complaint within 14 days of this order.

Defendants' arguments that the Consumer Fraud Act claim in count 4 is time-barred cannot properly be determined on a motion to dismiss. The question of when plaintiffs should have learned of their claims is an issue of fact, properly reserved for a motion for summary judgment. *See Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 441-442 (7th Cir. 1994)(three-year statute of limitations for Consumer Fraud Act claim runs from the time that plaintiff knows or reasonably should know of his injury, which is an issue of fact). Though defendants provide some evidence that the tax status of plantiffs' STEP Plan was known to be uncertain, that evidence does not demonstrate conclusively that plaintiffs should have known of their claim prior to February 14, 2000, three years before they filed their suit.[3]

Finally, we address the argument raised by defendant Hartford Life Insurance Co. in its

---

[3] Murphy argues that count 4 is time barred as against him under the 2-year statute of limitations for suits against insurance producers. *See* 735 ILCS 5/13-214.4. As we have indicated however, we cannot properly determine at this stage when plaintiffs' alleged ICFA claims accrued. If, as they contend, plaintiffs did not discover their claim until September 2002, then the February 2003 filing of this lawsuit complied with the two-year statute of limitations that Murphy argues should apply.

separately filed motion to dismiss that plaintiffs' Consumer Fraud Act claim is preempted by ERISA. The gist of plaintiffs' claim, as Hartford points out, is that defendants made false or misleading statements regarding the STEP Plan's treatment under ERISA, thereby inducing plaintiffs to invest in a Plan they would not otherwise have adopted. Hartford argues that the claim therefore "relates to" to an employee benefit plan and is expressly preempted under ERISA's preemption clause. 29 U.S.C. § 1144(a) (ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ..."). Hartford relies principally on the Seventh Circuit's decision in *Anderson v. Humana*, 24 F.3d 889 (7th Cir. 1994). Construing ERISA's preemption clause, the court there stated that "[a]n effort (which this suit is) to control the information provided to employees choosing benefits provided by an employer's plan is squarely within the preemption clause ... A claim that the literature distributed as part of a plan's administration is incorrect, or that employees were fraudulently induced to pick one option under a plan rather than another, lies comfortably within the zone of exclusive federal control." *Id.* at 891. Hartford argues that the Seventh Circuit's reasoning in *Humana* extends to the facts here, where plaintiffs are seeking to hold defendants liable for distributing misleading promotional materials prior to a plan's adoption, and for fraudulently inducing plaintiff's to adopt a particular type of ERISA plan. The Court disagrees.

The Seventh Circuit has not addressed this precise issue, but at least one Court of Appeals has distinguished for preemption purposes between claims based on actions during the administration of an ERISA plan, and fraudulent inducement claims based on a defendant's alleged efforts to persuade a plaintiff to participate in a particular plan. *See Perkins v. Time Insurance Co.*, 898 F.2d 470, 473-74 (5th Cir. 1990). Considering a preemption argument similar

to the one Hartford has advanced in its motion, the Court in *Perkins* stated:

> While ERISA clearly preempts claims of bad faith as against insurance companies for improper processing of a claim for benefits under an employee benefit plan ... we are not persuaded that this logic should extend to immunize agents from personal liability for their solicitation of potential participants in an ERISA plan prior to its formation. Giving the ERISA "relates to" preemption standard its common sense meaning, we conclude that a claim that an insurance agent fraudulently induced an insured ... to participate in an ERISA plan which did not provide the promised coverage, relates to that plan only indirectly. A state law claim of that genre, which does not affect the relations among the principal ERISA entities (the employer, the plan fiduciaries, the plan, and the beneficiaries) as such, is not preempted by ERISA.

*Id.* at 473 (citations omitted). Offering a different rationale, the Sixth Circuit also reached the conclusion that state law claims for fraudulent inducement to participate in an ERISA plan are not preempted by ERISA. *Perry v. P\*I\*E Nationwide, Inc.*, 872 F.2d 157, 161-62 (6th Cir. 1989). In *Perry*, the Court explained that preemption should apply to a state law claim "only if Congress has provided a remedy for the wrong or wrongs asserted," *id.* at 162, and it concluded that defendants had failed to show that plaintiffs could pursue their claims (for fraud and misrepresentation in obtaining their agreement to participate in an ERISA plan) under ERISA's civil enforcement provision. *See* 29 U.S.C. § 1132(a)(3) (a civil action may be brought "by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan").

In a recent ERISA preemption case, the Seventh Circuit expressed concerns similar to those raised in *Perry*. *See Trustees of the AFTRA Health Fund v. Biondi*, 303 F.3d 765, 783 (7th Cir. 2002). In *Biondi*, the plan administrator sued a pension plan participant to recover medical

12

expenses paid on behalf of the defendant's spouse who had continued to claim coverage under the plan despite the couple's divorce— a disqualifying event under the plan. *Id.* at 770. Addressing the defendant's argument that the plan administrator's common law fraud suit was "related to" ERISA and that his claim was preempted, the Court explained: "[b]ecause ERISA does not provide *any* mechanism for plan administrators or fiduciaries to recoup monies defrauded from employee benefit trust funds by plan participants, garden-variety state-law tort claims must, as a general matter, remain undisturbed by ERISA; otherwise there would be no way for a trust fund to recover damages caused by a plan participant's fraudulent conduct." *Id.*, at 782 (citing *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 834 (1988))(emphasis in original). In other words, ERISA's preemption clause is meant to bar other types of claims only if ERISA provides some remedy for the challenged conduct.

Taking the foregoing into consideration, we conclude that plaintiffs' Consumer Fraud Act claim is not preempted by ERISA. A claim that defendants fraudulently induced plaintiffs to adopt an ERISA plan–and allegedly did so by misrepresenting the plan's ERISA status–certainly "relates to" ERISA in a manner of speaking. But plaintiffs are entitled to pursue some cause of action for their alleged injuries, and defendants have given no indication of how ERISA addresses the particular wrong claimed here. A civil enforcement action under ERISA can only be brought against ERISA plans and their administrators and fiduciaries, *see Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996), and the defendant insurance companies have argued vigorously in their briefs that they owe no fiduciary duty to plaintiffs.

13

3. Objection to *pro hac vice* appearance

Defendants Bursey, Carpenter, STEP Plan Services, Inc., Benistar Admin Services, Inc., Benistar Insurance Group, Inc., Mellon Trust of New York, and Teplitzky & Company have objected to the motion of John J. Koresko, a member of the bars of Florida and Pennsylvania, to appear in this Court *pro hac vice* as attorney for plaintiffs. Defendants argue that Koresko is also a competitor of theirs and is attempting to "exploit this suit for competitive purposes." Dfdt. Objection, p. 2 (heading). They argue that this will complicate discovery of the case because Koresko's status as attorney will give him access to documents containing sensitive competitive information, including customer contact and other data. Plaintiffs do not really respond to this argument other than to state summarily that it is not a basis for denying Koresko's motion for admission.

Plaintiffs have effectively conceded Koresko's status as a competitor of the moving defendants. The Court agrees with them that this is not a basis for denying Koresko's motion. But it may well be a basis for limiting his access to discovery materials upon a proper showing. Because they are experienced litigators themselves, plaintiffs are presumably sophisticated enough to understand that such limitations might impair Koresko's ability to represent them. As they seem willing to proceed with these limitations, the Court will not deprive them of their chosen counsel. But plaintiffs may wish to rethink the matter as the case progresses.

The Court also rejects defendants' other arguments in opposition to Koresko's admission.

## Conclusion

For the reasons stated above, defendants' motions to dismiss [docket ## 33-1, 40-1, 41-1, 44-1, 63-1] are granted in part and denied in part. Count 3 is dismissed for failure to state a claim. Count 4 is dismissed for noncompliance with Rule 9(b). Defendants' motions are otherwise denied. Plaintiffs are granted leave to file an amended complaint on or before September 18, 2003. John Koresko's motion to appear *pro hac vice* is granted.

Date: September 3, 2003

MATTHEW F. KENNELLY
United States District Judge