# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1550 | **DATE** | 6/14/2004 |
| **CASE TITLE** | Daniels vs. Bursey | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   For the reasons set forth on the attached Memorandum Opinion and Order, the Court denies plaintiffs' motion for a preliminary injunction (187-1).

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | JUN 1 6 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 263 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN DANIELS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 03 C 1550 |
| | ) |
| WAYNE BURSEY, et al., | ) |
| | ) |
| Defendants. | ) |

DOCKETED
JUN 1 6 2004

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

This case concerns the marketing and administration of a "severance trust executive program" (STEP) plan, a type of employee welfare benefit plan targeted to employers with highly compensated employees. The partners and employees of Sanchez & Daniels, a Chicago law firm, on behalf of a putative class of STEP Plan investors, have sued a number of persons and entities who they allege fraudulently marketed the Plan and thereafter mismanaged it. They allege violations of the Employee Retirement Income Security Act (ERISA) and the Illinois Consumer Fraud Act, as well as common law fraud and breach of fiduciary duty. Plaintiffs have moved for a preliminary injunction seeking the removal of defendant STEP Plan Services, Inc. as administrator of the Plan and appointment of a receiver to manage the Plan's assets. For the reasons set forth below, the Court denies plaintiffs' motion.

Plaintiffs were participants in a STEP plan created by Teplitzky & Company at some point in the 1990's. At some later point, Benistar Admin Services, Inc. became administrator of the Plan. In February 2002, STEP Plan Services, Inc. took over as Plan administrator. Wayne

263

Bursey is the president of STEP Plan Services, Inc. Plaintiffs contend that STEP Plan Services, Inc. is the *alter ego* of several entities with the name "Benistar," which plaintiffs say are controlled by defendant Daniel Carpenter.

In their motion for preliminary injunction, the plaintiffs seek an order removing STEP Services, Inc. as administrator of the STEP Plan and preventing certain other defendants from playing any role in administering the Plan. Pltf. Motion, p. 1. Plaintiffs base this on allegations regarding various defalcations they say that Carpenter, various entities affiliated with him, and other defendants have committed, some of which purportedly concern the STEP Plan and some of which are unrelated to the STEP Plan. Plaintiffs also contend that the Plan administrator is effectively insolvent, which, plaintiffs appear to contend, renders it unfit to administer the Plan and may make it unable to satisfy a judgment if plaintiffs ultimately obtain one.

The purpose of a preliminary injunction is not to give the plaintiffs the ultimate relief they seek in the case. *See, e.g., Warnervision Entertainment v. Empire of Carolina, Inc.,* 101 F.3d 259, 261 (2d Cir. 1996). Rather, its purpose is to prevent irreparable injury and thereby preserve the relative positions of a party so that the court can render a meaningful decision once a trial on the merits is held. *United Food & Commercial Workers Union, Local 1009 v. Southwest Ohio Regional Transit Auth.,* 163 F.3d 341, 348 (6th Cir. 1998); *see Univ. of Texas v. Camenisch,* 451 U.S. 390, 395 (1981).

In order to obtain a preliminary injunction, the plaintiff must show some likelihood of success on the merits and that if an injunction is not granted, it will suffer irreparable injury for which it lacks an adequate legal remedy. *See, e.g., Foodcomm Int'l v. Barry,* 328 F.3d 300, 303 (7th Cir. 2003). If the plaintiff fails to meet any one of these prerequisites, the motion for a

2

preliminary injunction must be denied. *See, e.g., Cox v. City of Chicago,* 868 F.2d 217, 223 (7th Cir. 1989). If, on the other hand, the plaintiff establishes the prerequisites identified above, the Court then balances the harm risked by the moving party against that which the nonmoving party will suffer if the injunction is granted. *Foodcomm,* 328 F.3d at 303.

The Court need not assess the plaintiffs' claim of a likelihood of success on the merits, for they have failed to make a showing of irreparable harm, one of the "essential prerequisite[s]" for entry of a preliminary injunction. *See Jones v. Infocure Corp.,* 310 F.2d 529, 535 (7th Cir. 1001). Plaintiffs' primary focus appears to be defendant Carpenter, the sole shareholder of defendant Benistar Ltd., of which former Plan administrator and current defendant Benistar Admin Services, Inc., is a wholly owned subsidiary, and to which current Plan administrator STEP Plan Services, Inc. is said to be affiliated in a manner that plaintiffs do not describe with specificity. In a civil case tried in Massachusetts state court, Carpenter was recently found liable to investors in another Benistar-related entity, Benistar Property Exchange Trust Co., for over $25 million, based on claims of breach of fiduciary duty, misappropriation and/or conversion, and fraud. Benistar Admin Services, Inc. was later found by the trial judge to be liable for this judgment on an *alter ego* theory. Carpenter was thereafter indicted by a federal grand jury on fraud-related charges arising from the same events and is currently awaiting trial. Based on these events among others, plaintiffs appear to argue that neither Carpenter nor any entity with which he is connected should have anything to do with managing the STEP Plan.

A showing of current control or at least current involvement by Carpenter in the management or operation of the Plan administrator would seem to be an essential predicate of their request given its focus on Carpenter's alleged wrongdoing. But plaintiffs provided no such

3

evidence with their motion. Defendant Wayne Bursey, the president and CEO of STEP Plan Services, Inc., states in an affidavit submitted in response to plaintiffs' motion that Carpenter resigned as STEP Plan Services' board chairman in January 2004, that he makes no business or financial decisions for the company, and that he has no control over the STEP plan's funds. This evidence is uncontradicted on the present record. In addition, plaintiffs have provided nothing to the Court that indicates that Carpenter's adjudicated defalcations or any of the others plaintiffs cite involved the STEP plan's assets, or that those assets are at risk from the Massachusetts civil verdict or the possibility of a restitution or forfeiture judgment in the criminal case involving Carpenter.

Plaintiffs also suggest that Benistar, Benistar Admin Services, and – they seem to suggest– other related entities like STEP Plan Services, Inc. are or will be rendered insolvent by the Massachusetts civil verdict. But there is no indication that STEP Plan Services, Inc. was a defendant in that case or that it has been or is likely to become responsible for the verdict on an *alter ego* basis. And in any event, it appears based on defendants' submission that in Massachusetts, a prevailing party cannot execute on a judgment until appeals have been completed. At this point the Massachusetts verdict has not even been reduced to a final judgment in the trial court, let alone affirmed on appeal. For this reason, it does not appear at all likely that the Massachusetts judgment will become subject to execution before final judgment is entered in the present case.[1] And plaintiffs have provided the Court with no evidence indicating that the existence of the Massachusetts verdict, which Carpenter and the *alter ego* entities claim

---

[1] Discovery in the present case is set to close on November 22, 2004, and the deadline for filing dispositive motions is December 22, 2004. The Court intends to adhere to these dates and plans to set the case for trial in early spring 2005.

they are vigorously contesting, impairs STEP Plan Services, Inc.'s current ability to perform its functions with regard to the Plan.

The remaining matters cited by plaintiffs, assuming they are proven, are suggestive of wrongdoing that might ultimately result in a judgment on the merits in their favor. However, plaintiffs have not made a persuasive case that these matters, either individually or collectively, place either the plaintiffs or the Plan at risk of irreparable harm in the interim for which they lack an adequate remedy at law such that removal of the current Plan administrator might be appropriate.

For these reasons, the Court finds that plaintiffs have failed to raise a genuine issue regarding the existence of irreparable harm and thus that no evidentiary hearing is needed. *See In re Aimster Copyright Litigation*, 334 F.3d 643, 653-54 (7th Cir. 2003) ("in any case in which a party seeks an evidentiary hearing [on a motion for preliminary injunction], he must be able to persuade the court that the issue is indeed genuine and material and so a hearing would be productive"). Plaintiffs have failed to show that they will suffer "harm that cannot be prevented or fully rectified by the final judgment after trial." *Anderson v. U.S.F. Logistics (IMC), Inc.*, 274 F.3d 470, 478 (7th Cir. 2001). Because they cannot establish this essential prerequisite to their motion for a preliminary injunction, the Court denies the motion.

## Conclusion

For the reasons stated above, the Court denies plaintiffs' motion for a preliminary injunction [docket # 187-1].

Date: June 14, 2004

_____
MATTHEW F. KENNELLY
United States District Judge

5